United States District Court
District of New Jersey

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | HON. ESTHER SALAS |
| v. | : | Magistrate No. 09-7094 (ES) |
| GARTH CELESTINE<br>PHIL A. SIMON | : | **CRIMINAL COMPLAINT** |

I, Ryan Messer, being duly sworn, state the following is true and correct to the best of my knowledge and belief. From in or about 2004 to in or about 2007, in Essex County, in the District of New Jersey and elsewhere, defendants GARTH CELESTINE and PHIL A. SIMON did:

SEE ATTACHMENT A

in violation of Title 18, United States Code, Section 1349.

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

SEE ATTACHMENT B

_____
Ryan Messer
Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,
on August 4, 2009 at Newark, New Jersey

HONORABLE ESTHER SALAS                    _____
UNITED STATES MAGISTRATE JUDGE            Signature of Judicial Officer

## ATTACHMENT A

knowingly and intentionally conspire and agree with each other and others to devise a scheme and artifice to defraud homeowners who were facing foreclosure and lenders who made mortgage loans, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce writings, signs and signals for the purpose of executing such scheme and artifice, contrary to Title 18, United States Code, Section 1341,

In violation of 18 U.S.C. § 1349.

## ATTACHMENT B

I, Ryan Messer, am a Special Agent with the Federal Bureau of Investigation. I have knowledge about the facts set forth below from my involvement in the investigation, review of reports and documents, and discussions with other law enforcement officials. This complaint is submitted for a limited purpose, and I have not set forth each and every fact that I know concerning this investigation. All statements described herein are relayed in substance and in part.

The Scheme

1. At all times relevant to this complaint, defendants GARTH CELESTINE and PHIL A. SIMON owned and operated Home Savers Consulting Corporation ("Home Savers"), which held itself out as a home foreclosure rescue company. Defendants CELESTINE and SIMON operated Home Savers at 946 Fulton Street, Brooklyn, New York and 350 North Main Street, Freeport, New York and did business in New Jersey and New York.

2. At all times relevant to this complaint, defendants GARTH CELESTINE and PHIL A. SIMON, doing business as Home Savers, conspired with each other and others to defraud homeowners who were facing foreclosure and lenders who made mortgage loans, by making materially false and fraudulent pretenses, representations and promises, and causing interstate wire transfers in furtherance of the fraud.

3. Defendants GARTH CELESTINE and PHIL A. SIMON targeted persons in New Jersey and New York who had substantial equity in their homes but were facing foreclosure because of their inability to make their monthly payments.

4. Defendants GARTH CELESTINE and PHIL A. SIMON fraudulently promised to help the homeowners avoid foreclosure, keep their homes and repair their damaged credit. The homeowners were instructed to permit title to their homes to be put in the names of third party purchasers (the "straw buyers") for one year, during which defendants GARTH CELESTINE and PHIL A. SIMON promised to improve the homeowners' credit ratings, help them obtain more favorable mortgages on their homes and ultimately, return to them the title to their homes.

5. Defendants GARTH CELESTINE and PHIL A. SIMON told the homeowners that the equity withdrawn from their properties would be kept in escrow and used to pay the mortgages and expenses on their homes and to repair the homeowners' credit.

6. Also as part of their scheme, defendants GARTH CELESTINE and PHIL A. SIMON recruited individuals with good credit scores to act as straw buyers of the homes facing foreclosure. Defendants GARTH CELESTINE and PHIL A. SIMON typically told these individuals that they were helping someone to "save" their home and they were to receive

a fee of up to approximately $10,000 per property for agreeing to participate in the transaction.

7. Using the homeowners' properties and the good credit ratings of the individuals who were acting as straw buyers of the properties, defendants GARTH CELESTINE and PHIL A. SIMON applied for mortgages to extract the maximum available equity from the homes. To increase the credit worthiness of the straw buyers and to ensure they would be approved for the loans, defendants GARTH CELESTINE and PHIL A. SIMON submitted and caused to be submitted to mortgage lenders fraudulent loan applications in the straw buyers' names. These applications contained material false personal and financial information about the straw buyers, such as inflating their stated income, among other things, that the lenders relied upon when deciding whether to approve the loans.

8. In addition to the false statements concerning the straw buyers' financial condition, defendants GARTH CELESTINE and PHIL A. SIMON also falsely represented to the lenders that the straw buyers intended to reside in the property that would secure each mortgage loan, when, in fact, the properties were already occupied by the distressed homeowners.

9. Defendants GARTH CELESTINE and PHIL A. SIMON used many of the straw buyers to fraudulently obtain mortgage loans for multiple properties without fully disclosing those other transactions involving the same straw buyers to the lenders. To minimize the risk of detection by any of the lenders, these loan applications were presented to different lenders and the loans were closed within a short period of time.

10. Defendants GARTH CELESTINE and PHIL A. SIMON, either alone or together, attended each loan closing and controlled the payout of the loan proceeds. After each homeowner's debt was paid off and other fees were satisfied, defendants CELESTINE and SIMON caused the remainder of the loan proceeds to be deposited in the bank accounts of 527 Maple Court Corporation ("527 Maple Court"); 858 Atlantic Avenue Corporation ("858 Atlantic Avenue"); and Keep What's Yours, Inc. ("Keep What's Yours"), companies that they owned and controlled, and kept a significant portion of the money for themselves. In nearly every case, defendants CELESTINE and SIMON eventually failed to make the promised mortgage payments and caused the loans to default.

11. As a result of this conspiracy, defendants GARTH CELESTINE and PHIL A. SIMON caused the lenders to fund dozens of fraudulent loans worth more than $10 million and enriched themselves by obtaining more than $1.5 million in equity stripped from the refinanced home.

12. The following are examples of some of the loans that defendants GARTH CELESTINE and PHIL A. SIMON fraudulently caused to be funded and the ways in which they stripped millions of dollars of equity from these homes.

Glenwood Drive North, Bergenfield, New Jersey

13. In or about August and September, 2005, defendants GARTH CELESTINE and PHIL A. SIMON caused false mortgage loan applications and a fraudulent interstate wire transmission to be made for the purported purchase of a home on Glenwood Drive North, Bergenfield, New Jersey.

14. More specifically, Homeowner 1, who was facing foreclosure, saw an advertisement by Home Savers in the classified section of his local newspaper. Homeowner 1 called Home Savers and met personally with defendant PHIL A. SIMON that same day.

15. Defendant PHIL A. SIMON represented to Homeowner 1 that he would put Homeowner 1's house in the name of a "trustee" for a period of 12 months and that Homeowner 1 would be able to stay in his house for those 12 months for free. Homeowner 1 understood that Home Savers was going to handle everything else associated with the transaction, including making the mortgage payments.

16. In or about August 2005, defendant PHIL A. SIMON recruited A.G. to act as purchaser of Homeowner 1's home in return for a one-time payment. A.G. was told by defendant SIMON that as an "investor," he would be helping a financially troubled homeowner keep his home. A.G. was also advised by defendant SIMON that he would step in for the homeowner for a period of 12 months to allow the homeowner to improve his or her credit and that Home Savers would be responsible for the mortgage payments.

17. In or about August 2005, defendants GARTH CELESTINE and PHIL A. SIMON submitted and caused to be submitted to First Franklin, a division of National City Bank of Indiana, two false loan applications in the name of A.G. The applications falsely indicated that A.G. worked for a billing company and significantly inflated his true monthly income and asset information. The applications also falsely represented that A.G. was going to purchase the Bergenfield property as his primary residence.

18. Another document associated with the Bergenfield property sale, namely, the HUD-1 Uniform Settlement Statement ("HUD-1"), also contained false information. The HUD-1, dated August 26, 2005, falsely stated on line 303 that the borrower of the funds, A.G., contributed $584 toward the purchase of the home. In fact, A.G. contributed nothing toward the purchase of the Bergenfield property.

3

19. The HUD-1 also indicated on line 603 that Homeowner 1, the named seller of the home, received $405,405.07 as a result of the sale. In fact, Homeowner 1 received no monies from the transaction.

20. On or about August 26, 2005, based on the false information contained in the HUD-1 Settlement Statement and the loan application, First Franklin caused the transfer of funds via interstate wire in the amount of approximately $427,765.63 from Indiana into the closing attorney's Wachovia Bank trust account in New Jersey as proceeds of the loan.

21. On or about August 29, 2005, defendants GARTH CELESTINE and PHIL A. SIMON caused a check in the amount of approximately $35,600 to be drawn on these funds and deposited into the bank account of 527 Maple Court maintained at JP Morgan Chase Bank in New York.

22. On or about August 29, 2005, defendants GARTH CELESTINE and PHIL A. SIMON caused another check in the amount of approximately $20,647.44 to be drawn on these funds and deposited into the bank account of Keep What's Yours, Inc., maintained at M & T Bank in New York.

23. On or about August 29, 2005, defendants GARTH CELESTINE and PHIL A. SIMON caused another check in the amount of approximately $5,088.31 to be drawn on these funds and deposited into the bank account of Home Savers, maintained at JP Morgan Chase Bank in New York.

24. On or about August 29, 2005, defendants GARTH CELESTINE and PHIL A. SIMON caused another check in the amount of approximately $20,674.44 to be drawn on these funds and deposited into the bank account of defendant GARTH CELESTINE, maintained at JP Morgan Chase Bank in New York.

25. Nothing on the HUD-1 Settlement Sheet indicated that these payments were due and owing to 527 Maple Court, Keep What's Yours, Home Savers or defendant GARTH CELESTINE.

26. The mortgage for the Bergenfield property went into default for non-payment shortly thereafter.

Dehart Place, Elizabeth, New Jersey

27. In or about September 2005, defendants GARTH CELESTINE and PHIL A. SIMON caused a false mortgage loan application and a fraudulent interstate wire transmission to be made for the purported purchase of a home on Dehart Place, Elizabeth, New Jersey.

28. More specifically, Homeowner 2, who was facing financial difficulties, learned about Home Savers from one of his co-workers. Homeowner 2 called Home Savers and spoke with defendant GARTH CELESTINE concerning how Home Savers would be able to help him avoid foreclosure.

29. Defendant GARTH CELESTINE represented to Homeowner 2 and his wife that Home Savers would obtain new financing by making it look as if their house was sold to a "third party sponsor," when, in fact, the sponsor was only lending her name to the transaction. Homeowner 2 was led to believe that the "third party sponsor" would be able to obtain a loan at a lower interest rate based on her good credit rating and that the equity from the refinancing would be used to make the mortgage payments.

30. In or about September 2005, defendants GARTH CELESTINE and PHIL A. SIMON recruited Y.L. to act as purchaser of Homeowner 2's home in return for a one-time payment of between $5,000 and $10,000. Y.L. was told by defendants CELESTINE and SIMON that by lending her name, she would be helping a financially troubled homeowner keep his home. Y.L. was also advised by defendant SIMON that her name would be on the property for a period of 12 months to allow the homeowner to improve his or her credit and that Home Savers would be responsible for the mortgage payments.

31. In or about September 2005, defendants GARTH CELESTINE and PHIL A. SIMON submitted and caused to be submitted to BNC Mortgage Company ("BNC Mortgage") a false loan application. The application falsely indicated that Y.L. worked for a collections company and significantly inflated her true monthly income. The application also falsely represented that Y.L. was going to purchase the Elizabeth property as her primary residence.

32. Another document associated with the Elizabeth property sale, namely, the HUD-1, also contained false information. The HUD-1, dated September 30, 2005, falsely stated on line 303 that the borrower of the funds, Y.L., contributed $19,108.07 toward the purchase of the home. In fact, Y.L. contributed nothing toward the purchase of the Elizabeth property.

33. The HUD-1 also indicated on line 603 that Homeowner 2, the named seller of the home, received $136,768.45 as a result of the sale. In fact, Homeowner 2 received only $12,857.21 from the transaction.

34. On or about September 30, 2005, based on the false information contained in the HUD-1 Settlement Statement and the Elizabeth loan application, BNC Mortgage caused the transfer of funds via interstate wire in the amount of approximately $473,896.93 from New York into the closing attorney's Wachovia Bank trust account in New Jersey as proceeds of the loan.

35. On or about October 5, 2005, defendants GARTH CELESTINE and PHIL A. SIMON caused a check in the amount of approximately $69,076 to be drawn on these funds and deposited into the bank account of 527 Maple Court maintained at JP Morgan Chase Bank in New York.

36. On or about October 5, 2005, defendants GARTH CELESTINE and PHIL A. SIMON caused another check in the amount of approximately $17,212 to be drawn on these funds and deposited into the bank account of Keep What's Yours, Inc., maintained at M & T Bank in New York.

37. On or about October 6, 2005, defendants GARTH CELESTINE and PHIL A. SIMON caused another check in the amount of approximately $17,212 to be drawn on these funds and deposited into the bank account of defendant GARTH CELESTINE, maintained at JP Morgan Chase Bank in New York.

38. Nothing on the HUD-1 Settlement Sheet indicated that these payments were due and owing to 527 Maple Court, Keep What's Yours or defendant GARTH CELESTINE.

39. The mortgage for the Elizabeth property went into default for non-payment shortly thereafter.

South Prospect Avenue, Bergenfield, New Jersey

40. In or about November 2005, defendants GARTH CELESTINE and PHIL A. SIMON caused a false mortgage loan application and a fraudulent interstate wire transmission to be made for the purported purchase of a home on South Prospect Avenue, Bergenfield, New Jersey.

41. More specifically, Homeowner 3, who was facing foreclosure, received a flyer in his mailbox from Home Savers. Homeowner 3 contacted Home Savers and met with defendant GARTH CELESTINE to discuss how Home Savers would be able to help him avoid foreclosure.

42. According to Homeowner 3, defendant GARTH CELESTINE stated that Home Savers would arrange to put Homeowner 3's house in someone else's name for one year. During that one year, Home Savers would make all the mortgage payments. Homeowner 3 was led to believe that at the end of that one year period, he would take over the mortgage payments on a smaller loan.

43. In or about November 2005, defendants GARTH CELESTINE and PHIL A. SIMON recruited A.H. to act as purchaser of Homeowner 3's home in return for a one-time payment of approximately $10,000. A.H. was told by defendant CELESTINE that by

lending her name to the property for one year, she would be helping a financially troubled homeowner to keep his home. A.H. was also advised by defendant CELESTINE that Home Savers would be responsible for making the mortgage payments and that at the end of the one year period, title to the property would be transferred back into the name of the homeowner.

44. In or about November 2005, defendants GARTH CELESTINE and PHIL A. SIMON submitted and caused to be submitted to Argent Mortgage Company a false loan application in the name of A.H. The application significantly inflated her true monthly income and asset information and falsely represented that she was going to purchase the property as her primary residence.

45. Another document associated with this property sale, namely, the HUD-1, also contained false information. The HUD-1, dated December 2, 2005, falsely stated on line 303 that the borrower of the funds, A.H., contributed $8,581.46 toward the purchase of the home. In fact, A.H. contributed nothing toward the purchase of the property.

46. The HUD-1 also indicated on line 603 that Homeowner 3, the seller of the home, received $254,250 as a result of the sale. However, Homeowner 3 received less than half that amount, approximately $109,595.06, from the transaction..

47. On or about December 6, 2005, based on the false information contained in the HUD-1 Settlement Statement and the loan application, Argent Mortgage Company caused the transfer of funds via interstate wire in the amount of approximately $362,162.60 from California into the closing attorney's Wachovia Bank trust account in New Jersey as proceeds of the South Prospect Avenue property loan.

48. On or about December 6, 2005, defendants GARTH CELESTINE and PHIL A. SIMON caused the transfer of funds via interstate wire in the amount of approximately $48,827.62 to be drawn on these funds and deposited into the bank account of 527 Maple Court maintained at JP Morgan Chase Bank in New York.

49. On or about December 8, 2005, defendants GARTH CELESTINE and PHIL A. SIMON caused a check in the amount of approximately $28,495.67 to be drawn on these funds and deposited into the bank account of Keep What's Yours, Inc., maintained at M & T Bank in New York.

50. On or about December 8, 2005, defendants GARTH CELESTINE and PHIL A. SIMON caused another check in the amount of approximately $22,912.00 to be drawn on these funds and deposited into the bank account of defendant GARTH CELESTINE, maintained at JP Morgan Chase Bank in New York.

51. Nothing on the HUD-1 Settlement Sheet indicated that these payments were due and owing to 527 Maple Court, Keep What's Yours, or defendant GARTH CELESTINE.

52. The mortgage for the South Prospect Avenue property went into default for non-payment shortly thereafter.

North 3rd Street, Paterson, New Jersey

53. In or about May 2006, defendants GARTH CELESTINE and PHIL A. SIMON caused a false mortgage loan application and a fraudulent interstate wire transmission to be made for the purported purchase of a home on North 3rd Street, Paterson, New Jersey.

54. More specifically, Homeowner 4, who was facing foreclosure, saw an advertisement by Home Savers in her local newspaper. Homeowner 4 contacted Home Savers and dealt primarily with defendant PHIL A. SIMON.

55. Defendant PHIL A. SIMON advised Homeowner 4 that she would have to transfer ownership of her residence to a "trustee" for a period of 12 months. Homeowner 4 was told that she would remain living in her residence but that the transaction would appear as if she sold the house to the trustee. Homeowner 4 was further advised by defendant SIMON that Home Savers would pay the mortgage, bills and taxes for those 12 months, allowing Homeowner 4 to get back on her feet financially. After the one-year period, defendant SIMON promised G.T that her home would be transferred back into her name.

56. In or about May 2006, defendant PHIL A. SIMON recruited J.W. to act as purchaser of Homeowner 4's home in return for a one-time payment of approximately $10,000. J.W. was told by defendant SIMON that although he would sign documents that made it appear as if he were purchasing the house from the original owner, the equity earned from the transaction would be placed in an escrow account and would be used to make the mortage payments on the new loan. J.W. was told that he would not be responsible for making the new mortgage payments even though the loan was going to be in his name and that, after one year, the house would be transferred back to the original homeowner. According to J.W., he was not making a steady income at the time and he never provided defendant SIMON any employment or salary information.

57. In or about May 2006, defendants GARTH CELESTINE and PHIL A. SIMON submitted and caused to be submitted to BNC Mortgage a false loan application in the name of J.W. The application falsely indicated that J.W. worked for Keep What's Yours as a manager and significantly inflated his true monthly income and asset information. The application also falsely represented that J.W. was going to purchase the Paterson property as his primary residence.

58. Another document associated with the Paterson Property sale, namely, the HUD-1, also contained false information. The HUD-1, dated May 31, 2006, falsely stated on line 303 that the borrower of the funds, J.W., contributed $2,148.50 toward the purchase of the home. In fact, J.W. contributed nothing toward the purchase of the Paterson property.

59. The HUD-1 also indicated on line 603 that Homeowner 4, the named seller of the home, received $85,478.87 as a result of the sale. In fact, Homeowner 4 received only approximately $1,092 from the transaction.

60. On or about May 31, 2006, based on the false information contained in the HUD-1 Settlement Statement and the loan application, BNC Mortgage caused the transfer of funds via interstate wire in the amount of approximately $408,909.10 from Delaware into the closing attorney's Wachovia Bank trust account in New Jersey as proceeds of the loan.

61. On or about June 2, 2006, defendants GARTH CELESTINE and PHIL A. SIMON caused the transfer of funds via interstate wire in the amount of approximately $57,598.17 to be drawn on these funds and deposited into the bank account of 527 Maple Court maintained at JP Morgan Chase Bank in New York.

62. Nothing on the HUD-1 Settlement Sheet indicated that a payment of $57,598.17 was due and owing to 527 Maple Court.

63. The mortgage for the North 3rd Street, Paterson property went into default for non-payment shortly thereafter.

Crosby Avenue, Paterson, New Jersey

64. In or about July 2006, defendants GARTH CELESTINE and PHIL A. SIMON caused a false mortgage loan application and a fraudulent interstate wire transmission to be made for the purported purchase of a home on Crosby Avenue, Paterson, New Jersey.

65. More specifically, Homeowner 5 and his daughter, who were facing foreclosure, saw an advertisement by Home Savers in their local newspaper. Homeowner 5 called Home Savers and spoke with a respresentative concerning how Home Savers would be able to help him avoid foreclosure.

66. Homeowner 5 was advised by Home Savers that he and his daughter would obtain new financing by allowing Home Savers to put their house in the name of another individual for a period of one year. Homeowner 5 was informed that they would remain in the house during the one-year period and Home Savers would make the new mortgage payments from the equity that would be obtained from the new transaction after the prior

loan was paid. Homeowner 5 was told that this arrangement would allow him time to improve his financial situation and restore his credit.

67. In or about July 2006, defendants GARTH CELESTINE and PHIL A. SIMON again recruited J.W. to serve as a straw buyer. J.W. was encouraged to act as purchaser of the Crosby Avenue, Paterson property in return for another one-time payment of approximately $10,000. J.W. understood from his conversations with defendant SIMON that although he would sign documents that made it appear as if he were purchasing the house from the original owner, the equity earned from the transaction would be placed in an escrow account and would be used to make the mortage payments on the new loan. J.W. was told that he would not be responsible for making the new mortgage payments even though the loan was going to be in his name and that, after one year, the house would be transferred back to the original homeowner. According to J.W., he still was not making a steady income at the time and he did not provide defendant SIMON any employment or salary information.

68. In or about July 2006, defendants GARTH CELESTINE and PHIL A. SIMON submitted and caused to be submitted to New Century Mortgage Corporation, a false loan application in the name of J.W. The application falsely indicated that J.W. worked for Keep What's Yours as a manager and significantly inflated his true monthly income and asset information. The application also falsely represented that J.W. was going to purchase the Crosby Avenue, Paterson property as his primary residence.

69. Another document associated with the Paterson Property sale, namely, the HUD-1, also contained false information. The HUD-1, dated July 17, 2006, falsely stated on line 303 that the borrower of the funds, J.W., contributed $3,315.25 toward the purchase of the home. In fact, J.W. contributed nothing toward the purchase of the Crosby Avenue, Paterson property.

70. The HUD-1 also indicated on line 603 that Homeowner 5's daughter, the named seller of the home, received $96,698.80 as a result of the sale. In fact, Homeowner 5 received no monies from the transaction.

71. On or about July 18, 2006, based on the false information contained in the HUD-1 Settlement Statement and the loan application, New Century Mortgage Corporation caused the transfer of funds via interstate wire in the amounts of approximately $273,619.71 and $68,250.00 from New York into the closing attorney's Wachovia Bank trust account in New Jersey as proceeds of the loan.

72. On or about July 20, 2006, defendants GARTH CELESTINE and PHIL A. SIMON caused the transfer of funds via interstate wire in the amount of approximately $76,687.50 from these funds into the bank account of 527 Maple Court maintained at JP Morgan Chase Bank in New York.

10

73. Nothing on the HUD-1 Settlement Sheet indicated that a payment of $76,687.50 was due and owing to 527 Maple Court.

74. The mortgage for the Crosby Avenue, Paterson property went into default for non-payment shortly thereafter.